Submitted February 27, Case Number A129267 remanded for resentencing; Case Number A129268 affirmed October 15, 2008, petition for review denied January 29, 2009 (345 Or 690)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# TIMOTHY BRUCE CAVE,
*Defendant-Appellant.*

Columbia County Circuit Court
031257, 031258;
A129267 (Control), A129268

195 P3d 446

Ingrid Swenson, Executive Director, Peter Gartlan, Chief Defender, and Anne Fujita Munsey, Senior Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Heather Vogelsong, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals judgments of conviction in two consolidated criminal cases. In Case Number A129627, defendant was convicted of two counts of second-degree assault and one count of recklessly endangering another person. In Case Number A129268, defendant was convicted of one count each of reckless driving, felony fleeing or attempting to elude a police officer, and misdemeanor fleeing or attempting to elude a police officer. Regarding Case Number A129627, defendant assigns error to the trial court's refusal to give a unanimous verdict instruction to the jury and to the court's imposition of restitution without requiring the state to prove a causal connection between the damage incurred and an offense committed by defendant. The state concedes that the court erred in the latter regard. Defendant's last assignment of error relates to the trial court's denial of his motion for a judgment of acquittal on the misdemeanor fleeing or attempting to elude a police officer charge in Case Number A129268. We agree with the parties and accept the state's concession that the trial court erred with regard to its imposition of restitution. In the two other respects asserted by defendant as error, however, the trial court did not err. Accordingly, we remand for resentencing in Case Number A129267, but otherwise affirm.

The relevant facts are undisputed. Defendant rented out riding horses to campers near a lake that was a popular camping spot. One afternoon, defendant argued with one of the campers, Coyle. Later that evening, defendant rode a horse to several campsites looking for Coyle. Defendant found Coyle at a campsite with several other campers, including Pearce, Sanks, Sanks's niece and her friend, and Fergerson, Coyle's girlfriend. Defendant attempted to strike Pearce with an ax handle, which Pearce wrestled away from defendant. Defendant then rode away on the horse.

Pearce and Fergerson left to call the police. Coyle and Sanks sat around the campfire, discussing what to do if defendant came back. Defendant returned some time later and rode the horse into them, knocking them both to the ground. Coyle suffered fractured ribs and abrasions; Sanks fractured his collar bone.

Coyle ran to the edge of the lake and jumped in the water to hide from defendant. When Coyle heard defendant move on to another campsite, Coyle came out of the water and hid under a tree. Meanwhile, Sanks left in his car with his niece and her friend. They drove to a house down the road from the lake and called the police.

Three police officers arrived in the area shortly thereafter. They first made contact with Sanks, who was still at the house down the road from the lake. Sanks told them that defendant was on horseback and was chasing people down by the lake. When the officers arrived at the lake, they saw defendant riding a horse toward them. They announced their presence, shined their flashlights on him, and told him to stop; defendant rode away. The officers searched for defendant, but did not find him. They also interviewed the campers who were still at the lake, including Pearce, Fergerson, and Coyle. At some point after the incident, Sanks discovered that the tires on his car had been slashed.

Two weeks later, a police officer saw defendant driving a vehicle while not wearing a seatbelt. The officer activated his overhead lights, but defendant did not pull over. Instead, defendant drove away, running a stop sign, exceeding posted speed limits, and crossing the lines of his lane. The officer turned on his siren and chased defendant. Other police officers joined the chase, including one who pulled in front of defendant. Defendant passed that officer. The chase continued for approximately five miles into a rural area. Once the road became gravel, the officers slowed down for safety reasons, and they soon lost sight of defendant.

Some time later, the officers located defendant's vehicle, which was now empty and parked on a "spur road" 30 to 40 yards off the gravel road. The officers set up a perimeter and enlisted a canine unit to search for defendant, but they were unable to locate him. Nearly six hours later, defendant turned himself in at the police station and admitted, "Well, I eluded a whole batch of cops this afternoon. I figured I might be in trouble."

On the basis of the events at the lake, defendant was charged with first-degree assault, second-degree assault,

attempted second-degree assault, and recklessly endangering another person (Case Number A129627). On the basis of the vehicle chase, defendant was charged with reckless driving, fleeing or attempting to elude a police officer in a vehicle (a felony), and fleeing or attempting to elude a police officer on foot (a misdemeanor) (Case Number A129628).

The cases were consolidated for trial, and defendant was tried to a jury. Defendant testified at trial. On direct examination, he admitted that he eluded the police officers:

"[Defense Attorney:]   Well, why don't you tell the jury, did you elude and take off from police officers that day?

"[Defendant:]   Yes, I did.

"[Defense Attorney:]   And did you know that they were police officers in pursuit and trying to pull you over?

"[Defendant:]   Yes, sir, I did."

On cross-examination, he further testified as follows:

"[Prosecutor:]   * * * And you actually got away from the police, right?

"[Defendant:]   Yes, I did.

"[Prosecutor:]   You knew the police were still after you?

"[Defendant:]   Yes.

"[Prosecutor:]   And you jumped out of the pickup truck?

"[Defendant:]   Yeah.

"[Prosecutor:]   And you ran on foot?

"[Defendant:]   Yes, sir."

Defendant moved for a judgment of acquittal on the misdemeanor fleeing or attempting to elude a police officer charge, arguing that he did not flee or attempt to elude on foot because he had successfully eluded the police while still in the vehicle. He couched his argument in the following terms:

"There's absolutely no testimony as to how this situation ended with [defendant] fleeing. They lost track of the car. They no longer were—he no longer was eluding. The

crime had been completed. We don't know how much time elapsed. He turned himself in five or six hours later. They never found him.

"They found the vehicle awhile later and he wasn't there but we don't know if he pulled over eventually after the cops were out of sight, sat there for five, ten minutes, five minutes, what have you, simply got out of the car and walked away, but there is no evidence that at the time he got out of the vehicle and left on foot that he was still fleeing or attempted to elude the officers. The crime had been completed."

The court denied defendant's motion. Defendant also requested that the trial court instruct the jury that its verdicts must be unanimous. The court refused to give that instruction.

In Case Number A129627, the jury convicted defendant of two counts of second-degree assault—one as a lesser-included offense of first-degree assault—and one count of recklessly endangering another person. Regarding the assault convictions, the jury voted unanimously to convict on one, but voted 10-2 to convict on the other. Defendant was convicted as charged in Case Number A129628.

As part of defendant's sentence in Case Number A129627, the state requested $250 in restitution to Sanks to replace his tires that had been damaged on the night of the events at the lake. Over defendant's objection that the state had not proved that defendant's criminal activity caused the tire damage, the court granted the restitution to Sanks.

■ We begin with defendant's assignment of error relating to the trial court's denial of his motion for a judgment of acquittal on the misdemeanor fleeing or attempting to elude a police officer charge. Defendant contends that, to commit that offense, a person must get out of a vehicle and run from the "presence" of the police. As a result, according to defendant, because there was no police officer present when he got out of the vehicle, defendant could not be convicted of misdemeanor fleeing or attempting to elude the police. Instead, defendant argues, by the time he got out of the vehicle, he was no longer fleeing or attempting to elude the police because he had already successfully done so. Defendant

asserts that, if his conduct violates the statute, any person who commits the felony offense also commits the misdemeanor offense when he or she exits the vehicle, "even if that occurs 100 miles later when the person stops at a store to buy groceries."

The state responds that defendant's proposed construction of the statute that a police officer must be present when a defendant gets out of the vehicle is unpreserved. In any event, the state argues that defendant's argument fails because the statute makes no reference to the location of the police officer. All that the statute requires, according to the state, is that the person exit the vehicle to flee or attempt to elude the police. The state contends that the evidence in this case is sufficient to establish the elements of the offense and that the trial court properly denied defendant's motion for a judgment of acquittal.

■      We first address the state's preservation argument. According to the state, although defendant did argue that the state failed to prove the elements of the offense, he did not specify the particular statutory construction that he now advances on appeal, namely, that the officer must be "present" at the time that defendant commits the offense. As the quoted excerpt from the argument in support of defendant's motion makes clear, however, that is in effect what he argued at trial. He may not have used the words "statute" or "presence," but defendant plainly argued that, once the police were out of sight, he had completed the offense. We reject the state's preservation argument without further discussion.

We turn, then, to the parties' contentions on the merits of defendant's motion for a judgment of acquittal. ORS 811.540 provides, in part:

"(1)   A person commits the crime of fleeing or attempting to elude a police officer if:

"(a)   The person is operating a motor vehicle; and

"(b)   A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the

vehicle to a stop, including any signal by hand, voice, emergency light or siren, and either:

"(A)   The person, while still in the vehicle, knowingly flees or attempts to elude a pursuing police officer; or

"(B)   *The person gets out of the vehicle and knowingly flees or attempts to elude the police officer.*

"* * * * *

"(3)   The offense described in this section, fleeing or attempting to elude a police officer, is applicable upon any premises open to the public and:

"(a)   Is a Class C felony if committed as described in subsection (1)(b)(A) of this section; or

"(b)   Is a Class A misdemeanor if committed as described in subsection (1)(b)(B) of this section."

(Emphasis added.) Defendant does not dispute that he was operating a vehicle when he was signaled by a police officer to stop the vehicle. He also does not dispute that he knowingly fled or attempted to elude the police officers while in that vehicle, thereby violating ORS 811.540(1)(b)(A). His contention on appeal is that he did not violate ORS 811.540(1)(b)(B).

To decide whether the state proved that defendant violated ORS 811.540(1)(b)(B), we must determine the meaning of the statute intended by the legislature that enacted it by examining its text in context and, if necessary, its legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). In examining the text of the statute, we presume that the legislature intended the statutory terms to have their ordinary meanings. *Haynes v. Tri-County Metro.*, 337 Or 659, 663, 103 P3d 101 (2004).

Turning to the text of ORS 811.540(1)(b)(B), according to its terms, the statute is violated when, after being signaled by a police officer to stop a moving vehicle, a "person gets out of the vehicle and knowingly flees or attempts to elude the police officer." The terms "flee" and "elude" are not statutorily defined. Accordingly, we presume that the legislature intended those terms to have their ordinary meanings. The verb "flee," when used transitively, means "to run away

from : endeavor to avoid * * * or escape from" or "to leave abruptly : depart from suddenly or unexpectedly." *Webster's Third New Int'l Dictionary* 868 (unabridged ed 2002).[1] The transitive verb "elude" means "to escape the notice or perception of." *Id.* at 738. As a result, the phrase "attempts to elude" means "to attempt to escape the notice or perception of." Nothing in the wording of the statute suggests that the legislature intended the term to mean something other than that.

■ Based on the ordinary meanings of those words, we conclude that it is possible for a person to "flee[ ] or attempt[ ] to elude the police officer" even after he or she escapes the line of sight of the police officers. The focus of ORS 811.540(1)(b)(B) is on whether the person is "run[ning] away from" or attempting "to escape the notice or perception of" the police officers when he or she gets out of the vehicle. If the pursuing police officers momentarily lose sight of the person, that does not mean that, at that moment, the person is no longer fleeing or attempting to elude the officers.

In this case, defendant admitted that he attempted to elude the police as they engaged in their five-mile vehicle chase. He further admitted that, when the police apparently lost sight of him on the gravel road and he jumped out of his pickup truck, he knew that they were still after him. Viewing that evidence in the light most favorable to the state and giving the state the benefit of all reasonable inferences from that evidence, we conclude that a rational factfinder could find all the elements of the offense beyond a reasonable doubt in this case. *See State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995) (stating the standard for reviewing a denial of a motion for a judgment of acquittal). Accordingly, the trial court did not err in denying defendant's motion for a judgment of acquittal.

■ Defendant also assigns error to the trial court's refusal to instruct the jury that its verdicts must be unanimous.

---

[1] When *not* used transitively, "flee" means "to run away from or as if from danger or evil : hasten off" or "to hurry toward a source of security or protection—used with *to* or *into*." *Webster's* at 868 (italicization in original). Because ORS 811.540(1)(b)(B) does not couple "flees" with either "to" or "into," it seems as if the legislature intended to use "flee" in its transitive form.

According to defendant, his rights under the Sixth Amendment to the United States Constitution were violated when he was found guilty by less than a unanimous jury on one of the charges. In a memorandum of additional authorities, the state contends that our decision in *State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129 (2008), is controlling. We agree. In *Bowen*, we rejected an argument that is indistinguishable from defendant's argument in this case. *Id.* at 202. We reject defendant's assignment of error without further discussion.

■ Defendant's third assignment of error relates to the trial court's imposition of restitution on one of the second-degree assault convictions in Case Number A129267. The trial court ordered defendant to pay $250 in restitution for damage to the assault victim's tires. According to defendant, because the state failed to prove a causal connection between defendant's criminal activity—an assault on the victim's person—and damage to the victim's personal property, the trial court improperly awarded restitution. As we have noted, the state concedes that the trial court erred. Because the imposition of restitution requires that defendant's criminal activity be the cause of the damages, *State v. Dillon*, 292 Or 172, 181, 637 P2d 602 (1981), we accept the state's concession and agree that the trial court erred in ordering defendant to pay restitution for damage to the victim's personal property.

Case Number A129267 remanded for resentencing; Case Number A129268 affirmed.