Submitted September 19, 2019, affirmed August 26, petition for review denied December 10, 2020 (367 Or 291)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEVIN JOHN RAPP,
*Defendant-Appellant.*

Grant County Circuit Court
17CR33989; A166498

473 P3d 1126

Defendant was charged with fleeing or attempting to elude a police officer (Count 1) and reckless driving (Count 2), and those charges were tried to a jury. "A person commits the crime of fleeing or attempting to elude a police officer" if the person "knowingly flees or attempts to elude" a police officer under certain statutorily specified circumstances. ORS 811.540(1)(b)(A), (B). Defendant requested a jury instruction that was premised on his contention that the state was required to prove that he had intentionally attempted to elude a pursuing police officer. The trial court declined defendant's proposed jury instruction on the intentional mental state and instead instructed the jury only regarding the knowing mental state. Defendant assigns error to the trial court's failure to provide his proposed jury instruction, arguing that a person impermissibly "attempts to elude," for purposes of that statute, only if the person intentionally attempts to elude police, despite the legislature's use of the term "knowingly" in ORS 811.540(1)(b)(A) and (B). *Held*: The statute does not implicitly incorporate a requirement that the defendant have acted intentionally; thus, to prove a violation of ORS 811.540(1)(b)(A) or (B) based on an attempt to elude police, the state is not required to prove that the defendant acted intentionally. To the contrary, the mental state that applies is the one that the statute specifies, *i.e.*, "knowingly." The trial court therefore did not err when it refused to provide defendant's requested jury instructions.

Affirmed.

W. D. Cramer, Jr., Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and Mooney, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

Affirmed.

## HADLOCK, J. pro tempore

"A person commits the crime of fleeing or attempting to elude a police officer" if the person "knowingly flees or attempts to elude" a police officer under certain statutorily specified circumstances. ORS 811.540(1)(b)(A), (B). The question presented here is whether a person impermissibly "attempts to elude," for purposes of that statute, only if the person *intentionally* attempts to elude police, despite the legislature's use of the term "knowingly" in ORS 811.540(1)(b)(A) and (B). We conclude that the statute does not implicitly incorporate a requirement that the defendant have acted intentionally. We reject defendant's contrary argument and, therefore, affirm.

Defendant was charged with fleeing or attempting to elude a police officer (Count 1) and reckless driving (Count 2), and those charges were tried to a jury. The arguments that we address in this opinion center on the court's refusal to give jury instructions for which defendant advocated. Accordingly, our description of the facts focuses on the evidence that supports giving those requested instructions. *See State v. Payne*, 366 Or 588, 603-07, 468 P3d 445 (2020) (an appellate court reviews a trial court's refusal to give a jury instruction for legal error, viewing the evidence "in the light most favorable to the party requesting the instruction").[1]

One evening, police officer Scott Moore attempted to stop a truck driven by defendant. Moore testified that defendant drove "at a high rate of speed" after Moore pulled behind him. According to Moore, defendant continued to speed after Moore turned on his patrol car's lights and siren. Defendant "blew right through" an intersection, made a turn, went through a stop sign, and then pulled into the driveway of his house. Defendant emerged from the truck and was arrested.

Three people testified who had observed parts of the incident. One of those witnesses opined that the driver (defendant) had "really accelerated on his speed once he had spotted the lights of the officer's vehicle." That witness also

---

[1] Defendant also was charged with two traffic violations. The court found him not guilty of one violation and guilty of the other (driving while suspended).

testified to having heard sirens. A second witness testified about having seen the truck going fast and running a stop sign with a "police officer behind him with his lights on after him." That witness could not recall having heard a siren. A third witness testified that the police car had been traveling at a fast rate of speed without its lights on for some length of time before the officer turned on the lights. That witness also testified that she did not hear sirens until two or three minutes later.

Defendant also testified about what happened that evening, explaining that he had driven away from his house, heading to a particular business establishment, when he realized that he had left his wallet behind. Accordingly, defendant turned around to go home and retrieve the wallet. Defendant testified that, although he had seen a patrol car earlier, he did not see any officer as he drove back toward his house. He denied having seen any signal from police as he drove home. Thus, defendant asserted that that he had not heard any siren (he had been driving with his windows up) and had not seen red or blue lights (like those associated with police). Only after defendant turned into his driveway did he notice an officer driving with lights on; he then heard sirens after he got out of his truck. Defendant also testified that the vehicle he had been driving, an older pickup truck, was not capable of going as fast as other witnesses had described.

Before the parties made closing arguments, the lawyers and the court discussed the parties' proposed jury instructions as they related to Count 1, the charge of fleeing or attempting to elude a police officer. In the charging instrument, that count had been alleged with a "knowing" mental state, reflecting the text of ORS 811.540(1)(b)(A):[2]

---

[2] ORS 811.540(1) provides:

"A person commits the crime of fleeing or attempting to elude a police officer if:

"(a) The person is operating a motor vehicle; and

"(b) A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren, and either:

"The defendant, \* \* \* being an operator of a motor vehicle upon a public highway or premises open to the public and having been given a visible or audible signal to stop by a police officer \* \* \* did unlawfully and *knowingly*, while still in the vehicle, flee or attempt to elude a pursuing police officer."

(Emphasis added.) The state proposed jury instructions that included the definition of "knowingly" and that also tracked the wording of the charging instrument and ORS 811.540 (1)(b)(A) with respect to the crime of fleeing or attempting to elude a police officer:

"In this case, to establish the crime of fleeing or attempting to elude a police officer, the state must prove beyond a reasonable doubt the following elements:

"\* \* \* \* \*

"(4)	[Defendant], while still in the vehicle, *knowingly fled or attempted to elude* a pursuing police officer."

(Emphasis added.)

Defendant, like the state, requested that the jury be instructed on the definition of "knowingly." However, defendant also requested instructions that, as discussed in more detail below, were premised on his contention that the state was required to prove that he *intentionally* attempted to elude a pursuing police officer. In addition, defendant's proposed instructions purported to distinguish the crime of "fleeing" an officer from the crime of "attempting to elude" an officer, providing a separate instruction as to each.

Specifically, defendant first proposed an instruction that addressed what he characterized as "the offense of fleeing a police officer," with an associated knowing mental state:

"In this case, to establish the crime of fleeing a police officer, the state must prove beyond a reasonable doubt the following elements:

"(A)	The person, while still in the vehicle, knowingly flees or attempts to elude a pursuing police officer; or

"(B)	The person gets out of the vehicle and knowingly flees or attempts to elude the police officer."

"* * * * *

"(4)  [Defendant], while still in the vehicle, *knowingly fled* a pursuing police officer."

(Emphasis added.)

Second, defendant proposed separate instructions related to what he defined as "the offense of attempting to elude a police officer," with an associated intentional mental state:

"A person acts 'intentionally' or 'with intent' when that person acts with a conscious objective to engage in particular conduct.

"When used in the phrase intentionally attempted to elude a police officer, 'intentionally' or 'with intent' means that a person acts with a conscious objective to engage in conduct that constitutes a substantial step toward the commission of that crime.

"* * * * *

"A person attempts to elude a police officer when he intentionally engages in conduct that constitutes a substantial step toward the commission of that crime.

"* * * * *

"In this case, to establish the crime of attempting to elude a police officer, the state must prove beyond a reasonable doubt the following elements:

"* * * * *

"(4)  [Defendant], while still in the vehicle, *intentionally attempted to elude* a pursuing police officer."

(Emphasis added.)

Defendant explained to the trial court that he had proposed an instruction on the intentional mental state because "it goes to the attempt definition, that an attempt must be intentional." In other words, he asserted, "an attempt by definition is an intentional act." Defendant based his argument on the idea that "attempt" is a legal term of art that carries a specific definition that the court should provide to the jury. The state objected, asserting that it had not charged defendant with an "attempted other offense,"

but with "attempt to elude," which is "the point of the crime, whether or not they're successful."

The trial court agreed with the state, and it declined to deliver defendant's proposed instructions. Accordingly, the trial court instructed the jury regarding the knowing mental state, but not the intentional mental state. The court also instructed the jury that one of the elements the state had to prove to establish that defendant had committed "the crime of fleeing or attempting to elude a police officer" was that defendant, while still in his vehicle, "knowingly fled or attempted to elude a police officer." The jury found defendant guilty of both reckless driving and of fleeing or attempting to elude a police officer.

Defendant raises three assignments of error on appeal. First, defendant contends that the trial court erred when it denied a pretrial motion that he made to postpone the trial because of his concerns about recent publicity related to allegations that defendant had engaged in other, unrelated criminal conduct. We reject that argument without further discussion.

In his second assignment of error, defendant argues that the trial court erred when it failed to give this jury instruction: "A person attempts to elude a police officer when he *intentionally* engages in conduct that constitutes a substantial step toward the commission of that crime." (Emphasis added.) In his third assignment of error, defendant asserts that the trial court erred when it refused to give his proposed instruction regarding the meaning of "intentionally."[3] Defendant contends that (1) ORS 811.540 (1)(b)(A) states that there are two distinct ways to commit the charged crime, either by "knowingly flee[ing]" an officer *or* by "attempt[ing] to elude" an officer, (2) the legislature therefore "necessarily applied different mental states to

---

[3] As noted, the instruction regarding "intentionally" that defendant asked the court to deliver was, in its entirety:

"A person acts 'intentionally' or 'with intent' when that person acts with a conscious objective to engage in particular conduct.

"When used in the phrase intentionally attempted to elude a police officer, 'intentionally' or 'with intent' means that a person acts with a conscious objective to engage in conduct that constitutes a substantial step toward the commission of that crime."

the different *actus rei* (fleeing and eluding) that the crime encompasses," and (3) "'attempt' is a legal term of art" that incorporates an intentional mental state and a requirement of taking a substantial step toward commission of a crime. Defendant concludes that the state cannot obtain a conviction based on a defendant's attempt to elude police unless the state proves that the attempt was intentional.

In addition, defendant argues that a person cannot act with knowledge, *i.e.*, awareness, "that she is *endeavoring* to accomplish something unless the person actually *endeavors* to accomplish it." (Emphases in original.) We understand that aspect of defendant's argument to rest on a contention that, as a matter of logic, it makes no sense to speak in terms of *knowingly*—rather than *intentionally*—attempting to achieve a particular result.

In response, the state asserts that the crime identified in ORS 811.540(1) is not an inchoate crime and, therefore, an intentional mental state is not incorporated into the statute. The state views the statute as defining the crime of attempting to elude a police officer as "a substantive crime that is complete once a person knowingly continues to drive and avoids compliance with a pursuing officer. * * * In other words, the attempt to elude is, itself, the injury or harm described in the offense, not a substantial step toward some other offense." The state concludes that it was not required to prove an intentional mental state and that the trial court did not err when it refused to give defendant's requested jury instructions.

The parties' arguments require us to determine the significance of the word "attempts" in the statutory phrase "knowingly flees or attempts to elude a pursuing police officer." Specifically, we must determine whether, by using the word "attempts," the legislature implicitly attached an "intentional" mental-state requirement to the "attempts to elude" aspect of ORS 811.540(1). In undertaking that analysis, our paramount goal is to determine the legislature's intent. *McLaughlin v. Wilson*, 365 Or 535, 548, 449 P3d 492 (2019). We consider the text, context, and any helpful legislative history of the statute, keeping in mind that "there is no more persuasive evidence of the intent of the

legislature than the words by which the legislature undertook to give expression to its wishes." *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (internal quotation marks and citations omitted).

The plain text of ORS 811.540(1) defines a single crime that may be committed in either of two ways ("*the* crime of fleeing or attempting to elude a police officer" (emphasis added)). Moreover, the statute identifies only one applicable mental state, *i.e.*, "knowingly": "A person commits the crime of fleeing or attempting to elude a police officer" in certain circumstances if the person "*knowingly* flees or attempts to elude" the officer. ORS 811.540(1)(b)(A), (B) (emphasis added). Nothing in the statute's wording or structure suggests that the single identified mental state—knowingly—applies only to one of the ways to commit that crime (fleeing) and not to the other (attempting to elude). *Cf.* ORS 161.115(1) ("If a statute defining an offense prescribes a culpable mental state but does not specify the element to which it applies, the prescribed mental state applies to each material element of the offence that necessarily requires a culpable mental state.").

Nonetheless, defendant contends that the legislature's use of the word "attempts" necessarily imports a different mental state with respect to an attempt to elude, that is, that the person have *intentionally* undertaken that attempt. In that regard, he asserts that the 1963 legislature, which enacted the original statute making it a crime to "knowingly flee[] or attempt[] to elude" a police officer[4] would have understood the word "attempt" to incorporate that mental state. Defendant notes that, in 1963, another statute imposed reduced punishment for a person who unsuccessfully attempted to commit a crime if "no other provision [was] made by law for the punishment of such attempt." *Former* ORS 161.090 (1963).[5] Defendant also

---

[4] *Former* ORS 483.049(1) (1969), made it a crime for a person driving on a highway to "knowingly flee[] or attempt[] to elude any traffic or police officer" if the person had "received any signal from a traffic or police officer to bring the vehicle to a stop." That law was enacted in 1963. Or Laws 1963, ch 510, § 2.

[5] *Former* ORS 161.090 (1963) provided, in part:

"Any person who attempts to commit a crime, and in the attempt does any act towards the commission of the crime but fails or is prevented or

points to a then-existing *Black's Law Dictionary* definition that defined "attempt" for purposes of the criminal law as an "effort or endeavor to accomplish a crime * * *" that "does not bring to pass the party's ultimate design"[6] and a 1906 Oregon Supreme Court decision that, relying on legal treatises, held that "[a]n indictable attempt," under a statute worded similarly to *former* ORS 161.090 (1963), required "an intent to commit the crime" as well as "a direct, ineffectual act done towards its commission." *State v. Taylor*, 47 Or 455, 458, 84 P 82 (1906). From those sources, defendant infers that the 1963 legislature "treated 'attempt' as a legal term of art with a specific meaning" that imported an "intentional" mental state.

We disagree. The sources on which defendant relies do suggest that, in 1963, the state could charge a defendant with an attempt to commit an act that, if completed, would be a statutorily defined crime—and that, if the state did so, it would have to prove that the defendant undertook that attempt intentionally.[7] But those sources relate to *inchoate* crimes; they do not speak to the type of statute at issue here—a statute that *defines* a crime in terms of an attempted act. We have recently held that the mere inclusion of the word "attempts" in a statute does not always signify legislative intent to use that word in the sense associated with inchoate crimes. *See State v. Stockert*, 303 Or App 314, 319, 464 P3d 151 (2020) (concluding that the legislature used the word "attempt" in a statute "in its ordinary sense * * *, rather

---

intercepted in the perpetration thereof, shall be punished upon conviction, when no other provision is made by law for the punishment of such attempt, as follows:

"(1) If the crime so attempted is punishable by imprisonment in the penitentiary or county jail, the punishment for the attempt shall be by like imprisonment for a term not more than half the longest period prescribed as a punishment for the crime but in no event more than 10 years. * * *"

[6] *Black's Law Dictionary* 163 (4th ed 1951).

[7] The same is true now. Under ORS 161.405(1), "[a] person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward the commission of that crime." ORS 161.405(1), like *former* ORS 161.090 (1963), speaks to attempts to commit *other* crimes that the legislature has defined, not to the use of the word "attempts" in the definition of a substantive crime itself. *See State v. Kimbrough*, 364 Or 66, 73, 431 P3d 76 (2018) ("attempt," as defined in ORS 161.405, is an "inchoate" offense because it "may result in a conviction even when no substantive crime has been completed").

than in its legal sense of defining inchoate crime"). And, in our view, nothing in the text of ORS 811.540(1) evinces a legislative intent to incorporate ideas associated with inchoate crimes—in particular, the requirement of an intentional mental state—into the statute.

We turn to consideration of statutory context. We have found little in related statutes that would shed light on the meaning of "attempts" as used in ORS 811.540(1). We therefore look to our previous decisions construing ORS 811.540(1). *See State v. McDonnell*, 343 Or 557, 563, 176 P3d 1236 (2007), *cert den*, 555 US 904 (2008) (context includes prior case law interpreting a statute). Defendant identifies three such cases as supporting his argument: *State v. George*, 263 Or App 642, 330 P3d 1239 (2014); *State v. Reed*, 256 Or App 61, 299 P3d 574, *rev den*, 353 Or 868 (2013); and *State v. Cave*, 223 Or App 60, 195 P3d 446 (2008), *rev den*, 345 Or 690 (2009). In *Cave*, focusing on the definition of "elude," we held that "the phrase 'attempts to elude' means 'to attempt to escape the notice or perception of.'" 223 Or App at 68. We did not discuss what mental state applies. In *Reed*, we applied *Cave*'s interpretation of "attempt to elude" in a case in which the question was whether the defendant's multiple attempts to elude police officers should merge into a single conviction. 256 Or App at 69-70. Again, we did not discuss what mental state ORS 811.540(1) required the state to prove.[8] In *George*, we held, based on *Reed* and *Cave*, that a defendant "flees" in violation of ORS 811.540(1) "when, given a signal to stop, an individual knowingly continues and avoids compliance with a pursuing officer." 263 Or App at 646. We addressed the requisite mental state only briefly, holding that the defendant's lack of intent "to succeed in 'getting away' in the long term" did not defeat the state's case, because the defendant violated ORS 811.540(1) when he "failed to stop and continued to drive for some blocks." *Id*. Focusing on what it means for a person "to flee," we also noted that a violation of the statute "is complete when, given a signal to stop, an individual knowingly continues and avoids compliance with a pursuing officer." *Id*. at 645-46.

---

[8] We did apply the test for merger, which involves considering whether a defendant's criminal acts were separated by a pause sufficient for the defendant to renounce "criminal intent," 256 Or App at 63-64, but that is a different issue.

Defendant asserts that those cases "demonstrate why 'knowingly flee or attempt to elude' does not mean that a person must only 'knowingly attempt to elude.'" According to defendant, the cases show that a person "cannot 'elude' without achieving a result"—getting away. Accordingly, to *attempt* to elude must, according to defendant, mean to *endeavor* to get away—and such an endeavor necessarily involves intent to accomplish that aim.

We do not find the same significance in the holdings of *Cave*, *Reed*, and *George*. Defendant's argument depends on parsing the phrase "attempts to elude" so that it separates the idea of "attempting" from the idea of "eluding," essentially requiring the state to prove two distinct things—an action and an intentional mental state. None of the cited cases support that parsing of the phrase. If anything, *Reed* supports the opposite construction. In that case, we repeatedly described the defendant's attempts to elude police as involving "running and hiding" from them. 256 Or App at 70-72. Although not stated explicitly, we necessarily equated the act of "running and hiding" from police with "attempting to elude" them. Thus, we described the defendant's criminal conduct—his attempt to elude—as involving simply his act of running and hiding. And nothing in *Reed* suggests that such conduct necessarily implies or requires an "intentional" mental state.[9]

---

[9] The state finds different significance in the cited cases, particularly *George*, which the state argues is dispositive because it holds "that the offense of attempting to elude a police officer is complete when a person '*knowingly* continues and avoids compliance with an officer.'" (Quoting *George*, 263 Or App at 646 (emphasis added by state).). Although the state's quotation of *George* is accurate, we hesitate to deem it dispositive because our analysis in that case was not based on the requisite mental state, and—in the part of the opinion on which the state relies—we were focused on the "flees" aspect of the statute, not on the "attempts to elude" aspect that forms the basis of defendant's argument here.

We also do not rely on our holding in *State v. Enyeart*, 266 Or App 763, 768, 340 P3d 57 (2014), as dispositive, even though that holding depended on our observation that "the knowing mental state *** applies to the crime of attempting to elude a police officer." In *Enyeart*, the defendant had been charged with attempting to elude a police officer in violation of ORS 811.540(1)(b)(A), but he was convicted instead of interfering with a peace officer in violation of ORS 162.247(1)(b) as a lesser-included offense. *Id*. at 764. We agreed with the defendant that the "interfering" charge could not be a lesser-included offense of the "attempting to elude" charge because the former crime required the state to prove that she acted intentionally, and the latter required the state to prove only that she acted knowingly. *Id*. However, *Enyeart* did not address the question that is before us in this

To recap so far: The plain text of ORS 811.540(1) defines a single crime—"fleeing or attempting to elude a police officer." The statute specifies a single mental state—"knowingly"—for that crime, providing that a person commits the crime if the person "knowingly flees or attempts to elude" a police officer in certain circumstances. ORS 811.540(1)(b)(A), (B). Nothing in the text or context of that statute suggests that, by using the word "attempts," the legislature meant to import an "intentional" mental state with respect to the "attempts to elude" aspect of the statute. In addition, we have considered the legislative history offered by defendant and consider it unilluminating on the mental-state question at issue here.

We turn to an underlying theme of defendant's argument, which we understand as a contention that, as a matter of logic, a person cannot be said to *attempt* to achieve a result (here, eluding police) unless the person *intends* to achieve that result. We disagree. Again, defendant's argument depends on a parsing of the phrase "attempts to elude" that separates the word "attempts" from the word "elude," giving each word independent significance. As discussed above, nothing in the text or context of ORS 811.540(1) supports that parsing. To the contrary, in keeping with our holding in *Cave*, 223 Or App at 68, we understand the phrase "attempts to elude" to describe a *course of conduct*— attempting to escape the notice of police—that constitutes a completed crime if undertaken knowingly.

We disagree with defendant's suggestion that such a course of conduct is not one that, as a matter of logic, a person can undertake "knowingly" (as opposed to "intentionally"). Under Oregon law, a person acts knowingly with respect to criminal conduct described by statute if the person "acts with an awareness that the conduct of the person is of a nature so described." ORS 161.085(8). In our view, it is not fundamentally illogical to say that a person can "act with awareness" that the person is engaging in a course of conduct that amounts to an attempt to elude police. Take

case, *i.e.*, whether the legislature's use of the word "attempts" in ORS 811.540(1) implicitly attaches an intentional mental state to the "attempts to elude" part of the statute. As with *George*, we therefore do not consider *Enyeart* dispositive.

an example based on the facts from *Reed*: A person who is running and hiding from law enforcement officers can act with an awareness that, by engaging in such conduct, he is attempting to elude police—that is, to escape their notice or attention—even if the person does not act with that conscious objective. *See* ORS 161.085(7) (a person acts intentionally if the person "acts with a conscious objective"). At least, such a proposition is not so illogical that it requires us to infer that the legislature meant the "attempts to elude" aspect of ORS 811.540(1) to carry an "intentional" mental state, despite its express choice to apply the "knowingly" mental state to the crime that the statute defines.[10]

In sum, we reject defendant's contention that, to prove a violation of ORS 811.540(1)(b)(A) or (B) based on an attempt to elude police, the state must prove that the defendant acted intentionally. To the contrary, the mental state that applies is the one that the statute specifies, *i.e.*, "knowingly." The trial court therefore did not err when it refused to deliver defendant's requested jury instructions.

Affirmed.

---

[10] We observe that, in at least two other statutes, ORS 162.465 and ORS 167.439, the legislature has expressly attached a "knowing" mental state to a crime that is defined in terms of attempt. The former statute defines the crime of unlawful legislative lobbying as committed when a person "knowingly attempts to influence" a member of the legislature with respect to a measure in which the person has an interest that the person does not disclose. ORS 162.465(1). The latter statute defines the crime of forcible recovery of a fighting bird to include conduct in which a person "knowingly attempts to dispossess" a law enforcement agency of constructive possession of a fighting bird. ORS 167.439(1). Those statutes suggest that the legislature, too, does not perceive fundamental illogic in speaking of a "knowing" (rather than "intentional") attempt.