Submitted October 4, 2019; portion of judgment requiring defendant to pay attorney fees reversed, otherwise affirmed May 5; petition for review denied September 16, 2021 (368 Or 561)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JARROD TOLMAN SCOTT,
*Defendant-Appellant.*

### Tillamook County Circuit Court
16CR33746; A167219

488 P3d 803

Defendant appeals from a judgment of conviction for fleeing or attempting to elude a police officer and another crime. Defendant argues that the trial court erred by refusing to provide the jury an instruction defining "intentionally" with respect to the attempting to elude charge and by imposing $604 in attorney fees. *Held*: Because the applicable mental state for fleeing or attempting to elude a police officer is "knowing," defendant was not entitled to a jury instruction defining an alternative and inapplicable mental state. Therefore, the court did not err by refusing to issue defendant's requested instruction. With respect to the imposition of attorney fees, the trial court erred by considering money posted as security by defendant's mother as a financial resource of defendant, and, therefore, did not make the required factual finding of defendant's ability to pay attorney fees.

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.

Jonathan R. Hill, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and John P. Evans, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.

POWERS, J.

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.

**POWERS, J.**

In this criminal proceeding, a jury unanimously found defendant guilty of one count of fleeing or attempting to elude a police officer, ORS 811.540, and one count of resisting arrest, ORS 162.315. On appeal, defendant claims that the trial court erred by refusing to provide the jury an instruction regarding the meaning of "intentionally" in connection with the attempting to elude a police officer charge, by imposing $604 in attorney fees, and by instructing the jury that it could return nonunanimous verdicts. Defendant's argument concerning the nonunanimous jury instruction was foreclosed by the Oregon Supreme Court and for the reasons expressed in *State v. Ciraulo*, we reject that argument without further discussion. 367 Or 350, 354, 478 P3d 502 (2020) (concluding that, although a jury instruction permitting nonunanimous verdicts was erroneous, the error was harmless beyond a reasonable doubt because all of the jury's verdicts were unanimous).[1] For the reasons described below, we conclude that the trial court did not err in refusing to provide the "intentionally" instruction, but impermissibly assessed $604 in attorney fees; therefore, we reverse that portion of the judgment, but otherwise affirm.

In his first assignment of error, defendant asserts that the trial court committed reversible error by failing to instruct the jury on the definition of "intentionally" in the context of the attempt to elude charge. The statute defining the offense provides:

"(1)   A person commits the crime of fleeing or attempting to elude a police officer if:

"(a)   The person is operating a motor vehicle; and

"(b)   A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the

---

[1] Although not raised by the circumstances presented in this case, it is worth observing out of a sense of completeness that certain nonunanimous verdicts are permitted—indeed, a trial court must so instruct the jury—under Oregon law. *See State v. Ross*, 367 Or 560, 561, 481 P3d 1286 (2021) (concluding that a trial court is required "to instruct the jury that Oregon law requires a unanimous guilty verdict for all charges and permits a not-guilty verdict by a vote of 11-to-1 or 10-to-2").

vehicle to a stop, including any signal by hand, voice, emergency light or siren, and * * *:

"(A)   The person, while still in the vehicle, knowingly flees or attempts to elude a pursuing police officer[.]"

ORS 811.540. Although the phrase "attempts to elude" is not defined by statute, we held that in that context that phrase means "to attempt to escape the notice or perception of." *State v. Cave*, 223 Or App 60, 68, 195 P3d 446 (2008), *rev den*, 345 Or 690 (2009). Defendant's argument on appeal focuses on the language of the statute and the potential difference in culpable mental states for "flees" or "attempts to elude." In short, he argues that "knowingly" is the applicable mental state for "flees" and that, because a culpable mental state is omitted from "attempt to elude," the intentional mental state that applies to all criminalized attempts applies here too. That is, under defendant's argument, to be found guilty of attempting to elude, the state had to prove that it was his "conscious objective to elude police officers."

We recently addressed and rejected the same argument in *State v. Rapp*, 306 Or App 265, 473 P3d 1126, *rev den*, 367 Or 291 (2020), which was decided after briefing in this was completed and the case was under advisement. In *Rapp*, the defendant was charged with attempting to elude a police officer after continuing to drive at a high rate of speed after police pulled in behind him and then the defendant "'blew right through an intersection,' made a turn, went through a stop sign, and then pulled into the driveway of his house." *Id.* at 267. At trial, the defendant requested a separate jury instruction on what he defined as the offense of attempting to elude a police officer with the intentional mental state.[2]

_____

[2]  The defendant requested the following instruction:

"A person attempts to elude a police officer when he intentionally engages in conduct that constitutes a substantial step toward the commission of that crime.

"* * * * *

"In this case, to establish the crime of attempting to elude a police officer, the state must prove beyond a reasonable doubt the following elements:

"* * * * *

"(4) [Defendant], while still in the vehicle, intentionally attempted to elude a pursuing police officer."

*Rapp*, 306 Or App at 270.

*Id.* at 270. The state argued that attempting to elude was itself the substantive crime, not an inchoate crime involving a substantial step toward a separate substantive offense. As such, the state maintained that it was not required to prove an intentional mental state for attempting to elude. *Id.* at 272.

We concluded that the plain text of ORS 811.540(1) defines the single crime of "fleeing or attempting to elude a police officer." *Id.* at 277. The statute specifies the mental state of knowing, and neither the text nor context of the statute suggests that the legislature meant to borrow the intentional mental state from the attempted crime statute for application to the "attempts to elude" portion of the statute.[3] *Id.* In rejecting the defendant's argument, we held that the culpable mental state that applies to attempts to elude is exactly the one the statute prescribes: "knowingly."

In this case, defendant's argument, to the extent it is any different from that in *Rapp*, must similarly fail because it too requires application of the intentional mental state from ORS 161.405 to the attempt to elude charge under ORS 811.540. Even viewing the evidence in the light most favorable to defendant, as the party requesting the intentional instruction, it was not legal error to refuse to give such instruction. *See State v. Payne*, 366 Or 588, 603,

---

[3] Another way to view the distinction between what is criminalized in the context of ORS 811.540(1) and the criminal attempt statute, ORS 161.405, is to consider what precisely is being prohibited. In this case, like in *Rapp*, defendant asks us to read ORS 811.540(1) as prohibiting a result, *viz.*, eluding police. Attempt then, read in that context, would carry the legal meaning of ORS 161.405, which requires a person "intentionally engage in conduct which constitutes a substantial step toward commission of the crime." But as we noted, ORS 811.540(1) is not susceptible to that kind of parsing because what the legislature prohibited is the act of trying to get away, not the result of actually getting away. *See Rapp*, 306 Or App at 276 (equating the criminal conduct of attempting to elude with the act of running and hiding from police). Indeed, the legislature did not create a framework in which the offense of actually eluding police and attempting to elude are separately punishable. That is, whether a defendant, still in the vehicle, knowingly flees or attempts to elude a police officer, the crime is classified as a Class C felony in either instance. ORS 811.540(3)(a). The difference in punishment between attempting to elude and any other inchoate crime under the criminal attempt statute lends additional force to the conclusion that the general framework of attempts and, thus, the requisite mental state, intentionally, does not apply to the conduct proscribed in the fleeing or attempting to elude statute. *Compare* ORS 811.540(3) *with* ORS 161.405(2) (attempt, as criminalized under ORS 161.405 is classified as one class less serious than the completed crime).

468 P3d 445 (2020) (stating that appellate review of refusal to give a requested jury instruction is reviewed for errors of law, not abuse of discretion). Because ORS 811.540(1)(b)(A) criminalizes knowing attempts to elude a pursuing police officer, defendant was not entitled to an instruction for the intentional mental state with respect to that charge.

Defendant's second assignment of error challenges the trial court's imposition of $604 in court-appointed attorney fees, which he maintains was not based on a specific finding on the record that he was able to pay the fee. The trial court determined that the $3,000 security deposit defendant's mother posted was a financial resource of defendant and therefore that he had ability to pay.

During the sentencing hearing, defendant testified that he hoped to be able to find a job so that he could pay his mother back the money she had borrowed to pay for the security deposit. Sentencing was concluded a month later, and the trial court believed defendant was unable to pay attorney fees until the court clerk reminded the court about the security deposit. The following exchange occurred between the court and the court clerk:

"The Court:   Sir, we are not being negative, but I don't think you have the ability on this record to pay court appointed attorney's fees.

"Court Clerk:   He has $3,000 posted.

"The Court:   Oh the—okay. So based on that, sir, I would need to order court appointed attorney's fees in the amount of $604. And a fine of $100. The remainder would be sent back to the person posting it. And 15 percent would not be waived."[4]

After this exchange, the record is devoid of any further discussion of attorney fees, and defendant did not object when the court announced the fees. Defendant concedes that this assignment of error is unpreserved, but requests that we review it as one of plain error.

An unpreserved error is reviewable as plain error when (1) the error is one of law; (2) the legal point is obvious,

---

[4] Almost immediately after this exchange, the court determined that it would not impose the $100 fine.

meaning it is not reasonably in dispute; and (3) to "reach the error, we need not go outside the record or choose between competing inferences to find it." *State v. Nickerson*, 272 Or App 155, 156, 354 P3d 758 (2015). If, based on those predicates, we conclude the error is plain, we must then determine whether to exercise our discretion to correct it. *Id*. Among the prudential factors we weigh when considering whether to correct a plain error are:

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]"

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

The Supreme Court's recent decision in *State v. Morales*, 367 Or 222, 476 P3d 954 (2020), is dispositive on whether the claimed error in this case is plain. *See State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (explaining that we determine error based on the law as it existed at the time of the appellate decision, not at the time of the disputed ruling, and acknowledging the "ostensibly incongruous results" by that approach). In *Morales*, which was also decided while this appeal was pending, the court explained that the longstanding presumption that any funds deposited as bail or security by a third party were presumed to belong to the defendant was wrong because it did not give full effect to a 1979 amendment enacted by the legislature. 367 Or at 231. Absent that presumption, the court concluded that, when a nonspouse third party posts security for the benefit of a defendant, the security funds cannot be considered when determining a defendant's ability to pay attorney fees unless the record demonstrates that the deposit carried a donative intent or was actually of the defendant's own money. *Id.* at 234.

In this case, the record demonstrates that defendant's mother posted the security deposit, that she herself was on disability insurance and had been required to borrow the money to deposit for security, and that defendant

hoped to find a job to "be able to pay my mother back the money she borrowed for me so that I could pay for my bail." Accordingly, we cannot conclude that defendant's mother made the deposit with donative intent or deposited money that she was holding for defendant. Applying *Morales*, we conclude that the trial court plainly erred when it considered the security deposit as part of defendant's ability to pay attorney fees.

Turning to the prudential considerations informing our exercise of discretion to correct the error, we conclude that these factors weigh in favor of correcting the error. First, we find the erroneous imposition of attorney fees to be sufficiently grave. In this case, defendant's sole source of income was social security disability, and the record does not establish any history of employment to conclude that he would be able to work. These facts are analogous to those where we concluded imposition of $510 in attorney fees to be sufficiently grave where the record contained no evidence that the defendant has another source of income or that the defendant has, or will, have the capacity to pay the fees. *See State v. Hunt*, 271 Or App 347, 353, 350 P3d 521 (2015); *see also State v. Housego*, 276 Or App 550, 551, 368 P3d 62 (2016) (concluding that $360 in erroneous attorney fees was sufficiently grave to exercise discretion to correct the plain error when the record demonstrated that at the time of sentencing, the defendant "was living in his car, his girlfriend was pregnant, and his prospects for employment were completely unknown" given his prior convictions). The state's argument in this case focuses solely on the availability of funds from the security deposit as sufficient evidence to establish ability to pay and does not contend that there were any other means to support an ability-to-pay determination, such as employment history that would allow an inference of his ability to work while on probation. *See Housego*, 276 Or App at 551.

Moreover, even if defendant had objected to assessing attorney fees based on the security deposit made by his mother, at that point we had been applying the presumption that funds deposited by third parties for bail belonged to a defendant. *See Morales*, 367 Or at 231. Thus, even if defendant had objected, the trial court likely would have

concluded under then-existing law that the funds belonged to him, and therefore were correctly considered as part of his ability to pay attorney fees. It is only because of the subsequent clarification in *Morales* that we now know the presumption was eradicated by the legislature in 1979 and that to use third-party deposits as evidence of ability to pay attorney fees that the state must demonstrate donative intent or that the funds were a defendant's in the first place. *Id.* at 231, 234.

Finally, we repeatedly have exercised our discretion to correct the erroneous imposition of attorney fees in a plain-error posture. *See, e.g.*, *State v. Johnson*, 286 Or App 297, 395 P3d 985 (2017) (exercising discretion to reverse $322 in attorney fees); *State v. Brockway*, 283 Or App 726, 391 P3d 980 (2017) (exercising discretion to reverse $200 in attorney fees); *State v. Ramirez-Hernandez*, 264 Or App 346, 332 P3d 338 (2014) (exercising discretion to reverse $400 in attorney fees); and *State v. Coverstone*, 260 Or App 714, 716-17, 320 P3d 670 (2014) (weighing the prudential factors and exercising discretion to reverse erroneous imposition of $8,000 in attorney fees).

In short, considering defendant's circumstances—including the source of his income, lack of evidence of employment history, and the amount of fees imposed, balanced against the policy considerations that normally require preservation—we conclude that it is appropriate to exercise our discretion to correct the erroneous imposition of attorney fees.

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.