Argued and submitted September 23; decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings November 19, 2020

STATE OF OREGON,
*Respondent on Review,*

*v.*

GERARDO MORALES,
*Petitioner on Review.*

(CC 150034CR) (CA A166240) (SC S067225)

476 P3d 954

Defendant was convicted of various sex offenses following a trial at which he was represented by a court-appointed attorney. Following his conviction, the state requested that the defendant be required to pay attorney fees for his court-appointed counsel. Defendant objected, arguing that the trial court could not find that he had the ability to pay those fees, as required by ORS 161.665(4). The trial court imposed attorney fees based on money deposited by defendant's mother as security for defendant's pretrial release. The Court of Appeals affirmed without opinion. *Held*: Funds paid by and belonging to a third party cannot be the sole basis for a finding that a defendant has the ability to pay court-ordered costs such as attorney fees. Because the trial court determined that defendant here did not have the ability to pay, it was error to impose fees on the basis of the third party's security payment alone.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

Shawn E. Wiley, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Deputy Defender.

Adam Holbrook, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* On appeal from Hood River County Circuit Court, Karen Ostrye, Judge. 299 Or App 521, 449 P3d 593 (2019).

BALMER, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**BALMER, J.**

The issue before the court is whether funds deposited by a third party as security for release of a criminal defendant prior to trial can provide the basis for imposing attorney fees on the defendant, when the defendant does not otherwise have the ability to pay those fees. Here, the trial court found that defendant did not have the ability to pay fees, but it nevertheless ordered payment of fees from security funds deposited by defendant's mother. For the reasons set out below, we hold that, because the trial court determined that defendant did not have the ability to pay, it was error to impose fees on the basis of the third party's security payment alone.

The relevant facts are primarily procedural. Defendant was indicted on various sex crime charges and, after the trial court set bail, defendant's mother paid $20,000 as security for defendant's release prior to trial.[1] The notice defendant's mother signed when depositing the security funds on defendant's behalf stated that "[t]he Court may order that the security deposit be applied to any fines, costs, assessments, restitution, contribution, recoupment, or other monetary obligations that are imposed on the defendant." Defendant was represented by court-appointed counsel at trial, after which the jury found defendant guilty of several sex offenses.

Following those convictions, the state requested that defendant be required to pay attorney fees for his court-appointed counsel. Defendant objected on the ground that the court could not find that he had the ability to pay attorney fees. The state argued that when a third party makes a security deposit on behalf of a criminal defendant—as defendant's mother did here—that third party is informed that fees or fines might be paid out of that deposit. For that reason, the state argued, those funds are available to pay court-ordered fees and the defendant therefore has the

---

[1] While we primarily use the term "security" in this opinion, like the trial court and the parties, we sometimes use the older term "bail" as shorthand to describe pretrial release or the amount of security deposit required for such release. *See Rico-Villalobos v. Giusto*, 339 Or 197, 200 n 2, 118 P3d 246 (2005) (discussing those terms).

"ability to pay" such fees out of the security amount. The court imposed $5,000 in attorney fees and ordered it to be paid out of the money deposited by defendant's mother as security for his pretrial release. The court described its findings as follows:

> "THE COURT:   *** I didn't find that [defendant] had the ability to pay [attorney fees]. I found that there was bail sufficient to cover them. And that's the only finding I could reasonably make, and so that's the finding I did make."

Defendant appealed, arguing, *inter alia*, that the trial court erred in applying the security funds paid by his mother to the attorney fees without determining defendant's ability to pay, as required by statute. The Court of Appeals affirmed without opinion. *State v. Morales*, 299 Or App 521, 449 P3d 593 (2019). We allowed review to examine whether evidence that a third party paid a security deposit on behalf of a criminal defendant is sufficient on its own to find that that defendant had the ability to pay court-imposed attorney fees.

This question requires us to construe two statutes together—ORS 135.265 and ORS 161.665. When a criminal defendant is not conditionally released or released on personal recognizance, the judge "shall set a security amount that will reasonably assure the defendant's appearance" at future court proceedings in the case. ORS 135.265(1). The next section of the statute reads as follows:

> "The defendant shall execute a release agreement and deposit with the clerk of the court before which the proceeding is pending a sum of money equal to 10 percent of the security amount[.] *** When conditions of the release agreement have been performed and the defendant has been discharged from all obligations in the cause, the clerk of the court shall return to the person shown by the receipt to have made the deposit, unless the court orders otherwise, 85 percent of the sum which has been deposited ***."

ORS 135.265(2). ORS 135.265(2) thus provides that, upon payment of 10 percent of the security amount and the execution of a release agreement, the defendant is released. After the conditions of the release agreement have been performed and the defendant has been discharged from all

obligations in the case, the remainder of the security amount is returned to the person who made the deposit "unless the court orders otherwise." ORS 135.265(2). Practically speaking, then, if the court is authorized to impose fees or costs on a defendant, ORS 135.265(2) allows the court to order that those fees or costs be paid out of the security amount.

The question in this case involves the circumstances in which a court may "order[] otherwise," and not return the remaining security funds to the person who made the deposit. As relevant here, following the conviction of a criminal defendant, the court "may include in its sentence thereunder a money award for all costs specially incurred by the state in prosecuting the defendant * * * includ[ing] a reasonable attorney fee for counsel appointed" by the court. ORS 161.665(1). ORS 161.665(4) imposes certain requirements before a defendant may be ordered to pay costs:

> "The court *may not* sentence a defendant to pay costs under this section *unless the defendant is or may be able to pay them*. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."

(Emphases added.)

The Court of Appeals has held that "a trial court errs as a matter of law if it orders a defendant to pay court-appointed attorney fees without making [the] required finding" of the defendant's ability to pay. *State v. Mickow*, 277 Or App 497, 500, 371 P3d 1275 (2016). The imposition of fees cannot be "based on pure speculation that a defendant has funds to pay the fees or may acquire them in the future," but rather the record must contain "some information from which the court can find the statutorily required factual predicate to imposition of the fees: that the defendant 'is or may be able to pay' them." *State v. Pendergrapht*, 251 Or App 630, 634, 284 P3d 573 (2012).

Thus, before imposing fees, the trial court must complete a two-step process: first, the court must determine if the defendant "is or may be able to pay" the fees, and, second, the court must determine the amount of costs to be repaid. It appears to follow necessarily from the text of the

statute that, if a trial court is unable to find that the defendant "is or may be able to pay" the fees—or, to phrase it in the affirmative, if the trial court finds that the defendant does not have the ability to pay—the inquiry ends, and the court may not impose fees in any amount.

The parties here do not dispute that the requirement in ORS 135.265(2) that the security deposit be returned "unless the court orders otherwise" gives a trial court authority to exercise its discretion, subject to other statutory requirements, to apply the funds deposited as security to financial obligations imposed in the judgment—including attorney fees imposed under ORS 161.665. The parties also do not dispute that, prior to the imposition of attorney fees under that section, the trial court is required to determine the defendant's "ability to pay" using the criteria set out in ORS 161.665(4). What the parties do dispute, however, is whether funds deposited by a third party as security for release of a criminal defendant prior to trial can provide the basis for imposing attorney fees on a defendant who does not otherwise have the ability to pay those fees. For assistance answering that question, we turn to the text and history of the relevant statutes.

Both of the statutes at issue here—ORS 135.265 and ORS 161.665—were based on the work of the 1971 Criminal Law Revision Commission. Oregon law, however, has always permitted courts to require a defendant to deposit security funds and then later to apply the money deposited to costs and fines imposed as part of the judgment:

> "When money has been deposited in lieu of bail, if it remain on deposit at the time of a judgment for the payment of money, the clerk must, under the direction of the court, apply the money in satisfaction thereof, and after satisfying the same, must refund the surplus, if any, to the defendant."

General Laws of Oregon, Crim Code, ch XXV, § 283, p 489 (Deady 1845-1864).

Both defendant and the state discuss two cases from the 1920s, where this court interpreted a later version of the statute in the Deady Code and stated that, under the statute, "money deposited by a third person in lieu of bail for

one charged with a criminal offense is presumed to belong to the defendant[.]" *Rosentreter v. Clackamas County*, 127 Or 531, 534, 273 P 326 (1928) (citing *Erickson v. Marshfield*, 94 Or 705, 710, 186 P 556 (1920)). In *Erickson*, the plaintiff—Erickson—sued the city of Marshfield to recover the $100 bail he had paid on behalf of a criminal defendant, Foote, on a nuisance charge. *Id.* at 706. That nuisance charge was dismissed, but Foote ultimately was convicted of a different charge, for which a $100 fine was imposed. *Id.* at 705-06. The court noted that, in some states, there is a presumption that money deposited as security belongs to a criminal defendant on whose behalf the money was deposited, and determined that the statute it interpreted—which required that surplus funds be returned "to the *defendant*"—also contained such a presumption. *Id.* at 708-10 ("Under the provisions of the statute above quoted the defendant in the charge, with the approval of the court, may furnish cash bail, and it appears that when so furnished by a third party it shall be deemed and treated as the money of the defendant on the charge."). However, in that case, the court concluded that, because the testimony and evidence was conclusive that the money deposited instead belonged to Erickson—rather than Foote, the defendant—and was deposited on a charge other than the one for which the fine was imposed, the presumption had been overcome. *Id.* at 710-11.

In the 1970s, the legislature began to reconsider the structure of the criminal justice system in Oregon, including bail. Following the recommendations of the Criminal Law Revision Commission, the legislature in 1974 revised the existing statute regarding the return of money deposited in lieu of bail (and introduced the term "security" in place of "bail"):

> "When conditions of the release agreement have been performed and the defendant has been discharged from all obligations in the cause, the clerk of the court shall return to the accused, unless the court orders otherwise, 90 percent of the sum which has been deposited and shall retain as security release costs 10 percent of the amount deposited."

ORS 135.265(2) (1974). Although the 1974 statute and the Deady Code provision contain minor differences in wording,

both statutes, notably, provided that funds in excess of costs be returned to the defendant.

Oregon courts continued to apply the presumption recognized in *Erickson* to later versions of ORS 135.265. Interpreting the 1974 version of ORS 135.265—which, as noted, provided that excess security be returned "to the accused"—the Court of Appeals held that security paid by a defendant's friends and family could be used to pay the costs of the defendant's court-appointed counsel:

> "Defendant informed the trial court that only $150 of the deposit was his own, that his mother had borrowed $500 and that friends had provided the remainder. He argues that the effect of the forfeiture is to penalize his mother and friends. They had raised money for him to obtain his temporary freedom, but not for him to obtain a lawyer. We hold that because it was lawful for the court to regard the deposit as defendant's and available to satisfy defendant's obligations under the judgment, it was within the court's discretion to withhold its return for payment of defendant's obligations under the judgment."

*State v. Grant*, 44 Or App 671, 674, 606 P2d 1166 (1980) (internal citations omitted).

In 1979, however, the legislature responded to arguments similar to those made by the defendant in *Grant* as to the use of security deposits by third parties to pay financial obligations of defendants. It amended ORS 135.265 that year to require that "[w]hen conditions of the release agreement have been performed * * * the clerk of the court shall return *to the person shown by the receipt to have made [the] deposit* * * * 90 percent of the sum which has been deposited * * *." ORS 135.265(2) (1979) (emphasis added). This change to the statute was intended

> "to allow return of the security deposit in a criminal case to the person who in fact deposits the security, whether it be the defendant on his own behalf or a relative or friend or possibly an attorney. Under the current security system * * * [i]n a case where a defendant's friend or attorney paid the amount, it can only be returned to the defendant, even though the defendant was not the person who put up the money, and that has caused some problems."

Minutes, Senate Committee on the Judiciary, HB 3020, June 25, 1979, 3 (statement of Diana Godwin, Legal Counsel to the Senate Committee on the Judiciary). The legislature, then, seems to have considered whether the automatic repayment of surplus security deposits to a defendant is always the preferable choice, determined that it was not, and therefore changed the statute to require that the money be returned to the person who paid it. That change to ORS 135.265(2) reflects an intentional departure from the presumption read into the statute by this court in *Erickson* and applied in *Rosentreter* and later cases.

The Court of Appeals, however, has continued to apply the presumption adopted in *Erickson* and *Rosentreter* that security funds belong to the defendant whose release those funds secured. Over 20 years after the statutory basis for those cases changed, the Court of Appeals still cited *Grant*—which interpreted the earlier 1974 version of ORS 135.265—for that proposition:

> "According to appellants, *** the security deposit was the property of defendant's mother and Hoevet. Appellants neglect to consider that, as we held in *Grant*, money deposited with the court as security under ORS 135.265(2) 'is to be regarded as belonging to the defendant.' Moreover, before she assigned her interest in the security to Hoevet, defendant's mother deposited the funds with the court on the express condition that the funds would be used to satisfy defendant's obligations 'in this or any other case.' In other words, defendant's mother voluntarily offered the security to be used to satisfy defendant's obligations."

*State v. Baker*, 165 Or App 565, 571-72, 998 P2d 700, *rev den*, 330 Or 375 (2000) (internal citations omitted). The Court of Appeals' cases applying the presumption seem to assume, without much discussion, that the 1979 amendments had no effect on the presumption, stating that, "both before and after the 1979 amendment to ORS 135.265(2), Oregon courts have recognized a legal presumption that cash bail posted on behalf of a defendant belongs to the defendant." *State v. Laune*, 303 Or App 541, 544, 464 P3d 459 (2020). Further, the Court of Appeals has noted that it is "not aware of any requirement that money deposited as security by a third party be treated any differently than if it were deposited by

the defendant." *State v. Davis*, 116 Or App 607, 610, 843 P2d 460 (1992).

        In our view, the impact of the 1979 amendment requires a closer examination than the Court of Appeals has given it. As discussed above, *Erickson*—the case cited as the origin of the presumption—extrapolated the presumption from the statutory text that it was interpreting: "*Under the provisions of the statute* above quoted the defendant in the charge, with the approval of the court, may furnish cash bail, and it appears that when so furnished by a third party it shall be deemed and treated as the money of the defendant on the charge." 94 Or at 710 (emphasis added). The statutory provisions to which the court in *Erickson* and its progeny referred required that surplus funds be returned "to the *defendant*" (or, later, "to the *accused*")—a directive which, again, is no longer part of ORS 135.265(2). Moreover, when the legislature amended ORS 135.265 in 1979 to return excess funds to "the person shown by the receipt to have made [the] deposit," it was specifically addressing the practical problems with assuming that surplus bail money belonged to the defendant, and it amended the statute accordingly.

        Unlike the Court of Appeals, then, we read that 1979 change to ORS 135.265 as clearly eliminating the presumption that had been read into the earlier version of the statute by this court in *Erickson* and *Rosentreter* and applied by the Court of Appeals in *Grant* and other cases. The statute applicable here, of course, includes the 1979 amendment that requires the clerk to return the money paid as security to the person who made the payment, rather than to the defendant. Because the statute no longer provides that surplus security funds be returned to the defendant, but rather to the person who paid them, we conclude that Oregon law no longer includes a presumption that those funds belong to the defendant. To the extent that *Erickson* and *Rosentreter* could be read as establishing such a presumption on any ground other than the now-amended statute, we expressly disavow those decisions.

        The question then becomes whether, without the benefit of the presumption, funds deposited by a third party

as security can be considered in determining defendant's "ability to pay" under ORS 161.665(4). The state argues that, because the notice signed by the person making the security deposit provides that "[t]he Court may order that the security deposit be applied to *** monetary obligations that are imposed on the defendant," those funds are "available" to the defendant to pay costs. In the state's view, even in the absence of the presumption that the money belongs to the defendant, the trial court may consider those funds when assessing a defendant's ability to pay under ORS 161.665(4), because the funds constitute a "financial resource" of a defendant—at least for the purpose of paying court-ordered costs. Defendant counters that, where the record shows that the deposit was made by a third party, and there is no evidence that the deposit was intended to be a gift or other transfer of money *to the defendant*, the court may not consider those funds as part of a defendant's financial resources.

The question here is not whether a trial court *ever* could apply funds deposited by a third party to satisfy a defendant's court-imposed obligations. The issue before us, rather, is whether the deposit by a third party of security funds, by itself, can be the basis for a finding that a defendant has the ability to pay court-ordered costs. Put differently, do those third-party funds constitute "financial resources" of a defendant such that an otherwise indigent defendant may be deemed to have an "ability to pay" court-ordered costs?

The Court of Appeals has described what constitutes evidence of a defendant's ability to pay for purposes of ORS 161.665(4): "Such evidence may consist of information about the defendant's financial resources, educational background, work history, and anticipated future employment or educational status, to the extent there is a nonspeculative basis for assessing that future status." *State v. Mendoza*, 286 Or App 548, 550-51, 401 P3d 288 (2017). But, despite its statement in *Davis* that there is no "requirement that money deposited as security by a third party be treated any differently than if it were deposited by the defendant," 116 Or App at 610, the Court of Appeals also has noted that "[a] defendant is not necessarily able to pay attorney fees simply because he, or a friend or relative on his behalf, has posted

a security deposit," *State v. Nichols*, 68 Or App 922, 923, 683 P2d 565 (1984).

In a recent decision, the Court of Appeals reiterated its earlier cases on this question, stating that

> "a trial court can find that a defendant has the ability to pay a fee award where, as here, a security deposit has been made subject to the express condition that it may be used to pay fees or has been forfeited in a way that makes the funds available to pay a defendant's financial obligations."

*State v. Thomas*, 292 Or App 756, 763, 425 P3d 437, *rev den*, 364 Or 209 (2018). The court, however, declined to address the defendant's argument that the earlier cases should be reconsidered, concluding that the defendant had not objected to the imposition of fees in the trial court and, therefore, that the issue was subject only to "plain error" review. In *Thomas*, Chief Judge Egan wrote separately, concurring because of the plain error posture, but noting his concerns about the unsettled case law and the implications of such uses of third-party funds:

> "In my view, the ability of friends or family to pay security for a person whom they believe and trust to comply with the terms of release is completely separate from a *defendant's indigence* and ability to pay for an attorney. The message that our criminal justice system sends when it confiscates money intended for *security* but which is applied to *indigent defense* is clear: We will punish any faith that friends and family have in criminal defendants. In more polite terms, this practice acts as a disincentive to the payment of security. A disincentive to provide security for a family member or friend who clearly qualifies for *security* and who fully complies with the terms of that *security* is, by its very nature, a policy decision to jail people who cannot afford to pay the price of freedom out of their own pockets."

*Id.* at 765 (Egan, C.J., concurring) (emphases in original). Neither the concurrence nor the majority opinion in *Thomas* discussed the presumption that the funds belonged to the defendant or any of the cases establishing or applying that presumption.

We share the concerns expressed in the *Thomas* concurrence, and note that the fact that there are surplus funds

from a security deposit that could be available to cover costs under ORS 135.265(2) does not absolve the trial court of its independent responsibility to consider whether a defendant has the ability to pay, as required by ORS 161.665(4). An indisputably indigent defendant, for example, for whom a nonprofit organization makes a security deposit to permit the defendant's release pending trial, certainly would not have the "ability to pay" costs within the meaning of ORS 161.665(4), regardless of the terms and conditions in the notice. Perhaps a more searching inquiry would be necessary when a member of a defendant's immediate household posts the security, or when there is some indication that the party who posts the security funds intended to give or otherwise transfer that money to the defendant. In those cases, the inquiry is whether the funds—due to the defendant's relationship with the third party or the third party's intent in posting security—can fairly be considered to *belong* to the defendant and thus constitute "financial resources *of the defendant*" for purposes of ORS 161.665(4). Where, for example, a defendant's spouse makes a security deposit on behalf of the defendant, a closer examination of the particular circumstances may be necessary to determine whether the money deposited could be considered part of the "financial resources of the defendant." But when a non-spouse third party posts security on behalf of a defendant, with no indication of a donative intent or other evidence that the money in fact was the property of the defendant, surplus security funds are not a part of the defendant's "financial resources" such that the trial court may consider those funds in determining the defendant's ability to pay court-ordered attorney fees.

Here, the trial court expressly found that defendant did *not* have the ability to pay, but that, because there were excess security funds available to pay court-ordered costs, the "ability to pay" requirement had been satisfied. We disagree. As described above, the ability to pay inquiry requires two steps: the court first determines whether the defendant "is or may be able to pay" costs under ORS 161.665(4); if the answer is yes, then the court determines a reasonable amount to impose. If, however, the answer to the first question is "no"—that the defendant does *not* have the ability

to pay—the inquiry ends, and the court is not permitted to impose costs. A trial court may not determine that a defendant has no ability to pay costs under ORS 161.665(4) and then, despite that finding, impose fees under ORS 161.665(1) based solely on security deposit funds that do not belong to the defendant.

As discussed, we need not decide whether funds deposited by a third party as security never may be used to satisfy a defendant's obligations. When funds deposited by a third party nevertheless belong to a defendant, they may be used to satisfy the defendant's financial obligations. Without the presumption that security funds belong to a defendant, however, funds paid by and belonging to a third party cannot be the sole basis for a finding that a defendant has the "ability to pay" court-ordered costs.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.