Submitted January 29; portion of judgment requiring defendant to pay attorney fees reversed, otherwise affirmed July 21, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KALIFA RAMADAM GEDDEDA,
*Defendant-Appellant.*

Washington County Circuit Court
19CR17230; A172261

493 P3d 1112

In this criminal appeal, defendant seeks reversal of the trial court's imposition of attorney fees on the ground that there was insufficient evidence to find that he "is or may be able to pay" them. *Held*: Neither defendant's security-release agreement nor defendant's vague prospect of employment was sufficient to support the state's burden to establish that defendant had the ability to pay attorney fees.

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.

Theodore E. Sims, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Lauren P. Robertson, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.

**ARMSTRONG, P. J.**

Defendant was convicted of fourth-degree assault constituting domestic violence, ORS 163.160, and harassment, ORS 166.065—both misdemeanors—for which the trial court imposed 18 months' probation, $200 in fines, and $400 in attorney fees. In this criminal appeal, defendant seeks reversal of the trial court's imposition of attorney fees on the ground that there was insufficient evidence to find that he "is or may be able to pay" them. *See* ORS 151.505(3) ("The court may not require a person to pay costs under this section unless the person is or may be able to pay the costs."); ORS 161.665(4) (providing, in part, that "[t]he court may not sentence a defendant to pay costs under this section unless the defendant is or may be able to pay them").

At sentencing, which occurred just before 5:00 p.m. and immediately after defendant's trial, the discussion of defendant's ability to pay attorney fees went as follows:

"THE COURT:   You've been employed, haven't you?

"DEFENDANT:   I'm kind of doing care giving hopefully soon. If he lets me know after this conviction.

"THE COURT:   And when you're doing that, what—what kind of money were you making?

"DEFENDANT:   Right now, just was a little bit out of work, but hopefully, I'll make some money. I'll work on it right away.

"[DEFENDANT'S COUNSEL]:   So Judge, that's a job he's applied for. It's not one he's been given.

"DEFENDANT:   Yeah.

"THE COURT:   [Prosecutor], did we have restitution requested on this case?

"[PROSECUTOR]:   Zero on both.

"THE COURT:   All right. I'm going to impose $400 in attorney[] fees on this."

On appeal, defendant contends that he preserved the argument that he now raises because his trial counsel clarified that the employment he referred to was only a job for which he had applied, which was sufficient to alert the

trial court that defendant was objecting to the imposition of attorney fees. Alternatively, defendant asks that we review the error as plain error. ORAP 5.45(1). The state responds that defendant's clarification about his employment status was not an objection to the possibility that the court would find that defendant had the ability to pay attorney fees. We therefore turn to whether defendant preserved an objection to the imposition of fees.

In general, if an issue has not been presented to the trial court, we will not consider it on appeal. *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008); ORAP 5.45(1). The preservation rule's purposes are pragmatic. *State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011). For one thing, the rule "gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples*, 345 Or at 219. The preservation rule also "ensures fairness to opposing parties, by requiring that the positions of the parties are presented clearly to the initial tribunal so that parties are not taken by surprise, misled, or denied opportunities to meet an argument." *Walker*, 350 Or at 548 (internal quotations omitted). Finally, the preservation rule "fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it." *Peeples*, 345 Or at 219-20. It bears emphasizing that, "[p]articularly in criminal cases, in which there is a premium on considerations of cost and speed, the realities of trial practice may be such that fairly abbreviated shorthand references suffice to put all on notice about the nature of a party's arguments." *Walker*, 350 Or at 550.

Here, none of the pragmatic purposes of the preservation rule went unmet by defendant failing to make a more explicit objection to imposing attorney fees or a more explicit argument that he did not have the ability to pay them. First, this is a circumstance in which we can readily tell that the trial court was assessing defendant's ability to pay attorney fees when it asked defendant about his employment history and employment prospects before inquiring about other financial obligations that the state sought to impose. The court then imposed fees. Why else engage in that colloquy

except to comply with the statutory responsibility to make a finding, either express or implied, that defendant is or may be able to pay attorney fees? *See State v. Mickow*, 277 Or App 497, 502, 371 P3d 1275 (2016) (explaining that the "record [must] affirmatively support the inference that the trial court made the statutorily required finding that a defendant 'is or may be able to pay' fees"). We can think of none, and, this is not an instance where the trial court will be taken by surprise by the fact that we reached the merits of the issue. *Cf. State v. Sanelle*, 287 Or App 611, 620, 404 P3d 992 (2017), *rev den*, 362 Or 482 (2018) (concluding that an argument was preserved because, among other reasons, the context of a *Miranda*-violation hearing and the court's ruling on an issue made it clear that it was understood that defendant's invocation of the right to counsel was at issue).

Further, in the midst of the trial court's inquiry, defendant's attorney drew attention to the fact that the caretaking position to which defendant referred had only been applied for and not been offered. In doing so, counsel emphasized that defendant's employment prospects were uncertain. That uncertainty dovetails with the argument defendant now makes on appeal: Because defendant was unemployed at the time of sentencing with no definite job prospects, any determination that he had the ability to pay the attorney fees would be speculative. We are satisfied that counsel's point was shorthand for asserting that defendant did not have the ability to pay fees. And, it is understandable that defendant would use shorthand in that way given the context of the court's inquiry: The sentencing portion of defendant's trial was held very late in the day after defendant's trial, and the court and the parties quickly went through sentencing on defendant's two misdemeanor convictions. *Cf. Sanelle*, 287 Or App at 621 (noting that the record reflected "that the parties were short on time and were deliberately cutting short their arguments in the interest of time, with the apparent understanding that all knew what the legal issue was").

Having concluded that the issue was preserved, we turn to the merits. "A court cannot impose fees based on pure speculation that a defendant has funds to pay the fees or may acquire them in the future." *State v. Pendergrapht*,

251 Or App 630, 634, 284 P3d 573 (2012). That is, there "must be some information [in the record] from which the court can find the statutorily required factual predicate to imposition of fees: that the defendant 'is or may be able to pay' them." *Id*. at 634 (quoting ORS 161.665(4)). "A court cannot perform that task if it has no information regarding the defendant's existing or potential financial resources." *Id*. Evidence of an ability to pay "'may consist of information about the defendant's financial resources, educational background, work history, and anticipated future employment or educational status, to the extent there is a nonspeculative basis for assessing that future status.'" *State v. Morales*, 367 Or 222, 232, 476 P3d 954 (2020) (quoting *State v. Mendoza*, 286 Or App 548, 550-51, 401 P3d 288 (2017)). It is the state that bears the burden of proving that a defendant is or may be able to pay attorney fees. *State v. Kanuch*, 231 Or App 20, 24, 217 P3d 1082 (2009).

Defendant asserts that the record does not permit a finding that the defendant was able to pay fees because, at the time of sentencing, he was unemployed and did not have any offer of employment; thus, any finding that he could obtain future employment was speculative. The state responds that the record supports a finding that defendant had the ability to pay the fees because he posted a security amount ($2,500) under a security-release agreement, which provided that defendant understood that the security amount would "be applied to any fines, fees, restitution or court-ordered financial obligation." Further, the state responds by asserting that there was evidence that defendant had been employed as a caregiver, which was sufficient for the court to find an ability to pay. For the following reasons, we disagree with the state that it met its burden to establish that defendant had the ability to pay attorney fees.

With respect to the state's argument that the security-release agreement was evidence in the record to demonstrate that defendant had the ability to pay attorney fees, we see nothing in the record that reflects that the trial court relied on the security-release agreement as a basis to determine that defendant had the ability to pay attorney fees. *Cf., e.g.*, *State v. Casas*, 295 Or App 519, 520, 433 P3d 785 (2018) (where "the trial court ordered defendant to pay

a $184 court-appointed attorney fee from a security amount totaling $7,500 that had been previously posted"). On the contrary, the trial court appears to have relied on the information it elicited from defendant about his employment status.

Further, the security-release agreement on which the state now relies as evidence of defendant's ability to pay could have been introduced below, or the state could have asked the trial court under ORS 135.265(2) to apply defendant's security deposit after having determined that defendant had the ability to pay. *See Morales*, 367 Or at 233-34 (noting that "the fact that there are surplus funds from a security deposit that could be available to cover costs under ORS 135.265(2) does not absolve the trial court of its responsibility to consider whether a defendant has the ability to pay, as required by ORS 161.665(4)"). Had it done so, the court could have determined whether the funds deposited by defendant, in fact, belonged to him. *Cf. Morales*, 367 Or at 235 (when funds deposited by a third party "belong to a defendant, they may be used to satisfy the defendant's financial obligations").[1] Consequently, because the predicate conditions for considering the state's argument concerning defendant's security deposit are not met, we do not consider it. *See Outdoor Media Dimensions, Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining that, "even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a different record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance").

Turning to the evidence that the trial court did consider—defendant's employment history and status—we conclude that it was insufficient as a basis for the trial court

---

[1] Just as funds deposited by a third party may belong to the defendant, funds deposited by a defendant may belong to a third party. How a defendant acquired the funds to post the security deposit may affect the ability to pay attorney fees. *See Casas*, 295 Or App at 520-21 (commenting that "defendant's security deposit appears to provide sufficient evidence to support the trial court's imposition of court-appointed attorney fees, even if a trial court, when properly presented with questions in the first instance as to how defendant acquired the funds for a security deposit, might reach a different result").

to find that defendant had the ability to pay attorney fees. At the time of sentencing, defendant was unemployed and there is nothing in the record that indicates that he had any prospect of employment other than a job for which he had applied. There was no evidence that that prospect was likely. Nor, as the state suggests, was there anything in the record indicating that defendant had worked as a caregiver, much less evidence about how much defendant had earned in the past, how much he had been able to work, or the reasons for his unemployment. *Cf. State v. Moreno-Hernandez*, 290 Or App 468, 477, 415 P3d 1088 (2018), *rev'd in part on other grounds*, 365 Or 175, 442 P3d 1092 (2019) (plain error to impose attorney fees on the basis "that defendant appeared healthy at the time of sentencing and had worked in the past," because it did "not allow a nonspeculative, objective assessment of defendant's present or future capacity to pay fees").

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.