686 May 30, 2024 No. 341

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NELSON ARAON LOPEZ-MORALES,
aka Nelson Aaron Lopez-Morales,
*Defendant-Appellant.*

Washington County Circuit Court
19CR69169; A178598

Ricardo J. Menchaca, Judge.

Submitted April 30, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Matthew Blythe, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Lauren P. Robertson, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

A jury convicted defendant of first-degree sodomy involving a child under 12 years of age, ORS 163.405 (Count 1), and first-degree sexual abuse of the same child, ORS 163.427 (Count 2). In addition to imposing a prison sentence, the trial court ordered defendant to pay $5,000 in court-appointed attorney fees. On appeal, defendant assigns six errors, challenging, for the first time, the trial court's failure to *sua sponte* strike testimony and its imposition of court-appointed attorney fees, and he asks us to exercise our plain-error discretion to review those issues. We conclude that the trial court did not plainly err in not striking the testimony or in imposing the fees. Accordingly, we affirm.

We begin with defendant's first five assignments of error, in which he argues in a combined argument that it was plain error for the trial court not to strike testimony by Hidalgo, a child forensic interviewer at CARES Northwest, who interviewed B, the alleged victim. Each of those assignments of error concerns responses by Hidalgo to questions about whether various statements by B, then five years old, were "concerning" to Hidalgo. Defendant argues that the trial court should have *sua sponte* struck testimony that Hidalgo was not concerned when: (1) B stated that she did not know why she was being interviewed; (2) B stated that she was kidding; (3) B was reluctant to discuss the abuse; (4) B initially denied the abuse; and (5) B disclosed additional abuse for the first time at the interview. Defendant argues that Hidalgo's testimony constituted impermissible comment on the credibility of a witness or, in other words, improper vouching. We are not persuaded.

Hidalgo interviewed B about three weeks after B's initial disclosure of abuse. Hidalgo explained that she begins her interviews with a "practice narrative," that involves describing the interview room and asking the child how they got to the clinic, to help the interviewer assess the child's communication abilities. Defendant's first assignment of error pertains to the following exchange:

"[PROSECUTOR:]   And when you first asked her why she was there, did she immediately know why she was there?

"[HIDALGO:]   No.

"[PROSECUTOR:]   Was that concerning to you?

"[HIDALGO:]   No.

"[PROSECUTOR:]   Why not?

"[HIDALGO:]   That, one, because of her age. Right? And, two, if nobody explains to a child her age why they're there, or even older, they may not know. They may just think it's a regular checkup."

Defendant's second assignment of error focuses on Hidalgo's statement that she was not concerned about B's statement that she was "just kidding." That assignment is based on the following exchange:

"[PROSECUTOR:]   Okay. In [B]'s practice narrative, she talked about there being traffic and you asked her what traffic was.

"And then she talked about [how] the police came, but everything was fine, and they went, and then she said, 'Just kidding.'

"[HIDALGO:]   Mm-hmm.

"[PROSECUTOR:]   Was that concerning to you?

"[HIDALGO:]   No.

"[PROSECUTOR:]   Why not?

"[HIDALGO:]   That's very typical for a child her age to say something happened and then, 'Just kidding,' right? Like they're learning what that means. What it means to joke around and so wasn't concerning to me at all.

"[PROSECUTOR:]   Okay. Was it helpful for you to see how she joked?

"[HIDALGO:]   Yeah. Absolutely.

"[PROSECUTOR:]   Later on when she talked about things that happened to her, did she also say, 'Just kidding'?

"[HIDALGO:]   Later on, not during the practice narrative, but other things? No, I don't believe so."

Defendant's third and fourth assignments of error are based on testimony about B's reluctance to describe the alleged abuse. The first exchange went as follows:

"[PROSECUTOR:]   When you first started talking to [B] about what she was doing there and when you brought up [defendant], did she immediately want to talk about that?

"[HIDALGO:]   No.

"[PROSECUTOR:]   Was that concerning to you?

"[HIDALGO:]   No.

"[PROSECUTOR:]   Why?

"[HIDALGO:]   Children can often be reluctant about the reason why they're at CARES."

Shortly thereafter, there was also testimony about B's statement that "nothing happened."

"[PROSECUTOR:]   Okay. When you talked to [B] about her family versus when you talked to her about [defendant], did her—did you observe her behavior change?

"[HIDALGO:]   Absolutely.

"[PROSECUTOR:]   What did you observe?

"[HIDALGO:]   Yeah. She got very serious.

"[PROSECUTOR:]   Okay. Did she initially say nothing happened?

"[HIDALGO:]   She did initially say, 'Nope.'

"[PROSECUTOR:]   Okay.

"[HIDALGO:]   Nothing happened, yeah.

"[PROSECUTOR:]   Was that concerning to you?

"[HIDALGO:]   No.

"[PROSECUTOR:]   Why?

"[HIDALGO:]   Again, children can be reluctant. They might question, is this an okay place to talk about this? So not concerning."

Defendant's fifth assignment of error concerns testimony about new disclosures of abuse that B made during the CARES interview:

"[PROSECUTOR:]   So in this situation, [B] talked about what had happened on the same day that it happened?

She told her sister the same day that it happened. But when she came in to talk with you, she also talked about some other things that had happened in the past.

"In your training and experience, was it concerning to you that the first time anyone had heard about this was in a CARES interview talking to you? About the putting his penis in her belly button.

"[HIDALGO:]   No.

"[PROSECUTOR:]   Why?

"[HIDALGO:]   That's common.

"[PROSECUTOR:]   Why?

"[HIDALGO:]   Yeah. For a variety of different reasons. So oftentimes the most recent incident is what comes to a child's mind. It doesn't even occur to them to talk about any previous incidents. And so that can be one of the reasons.

"[PROSECUTOR:]   A child [B]'s age, if somebody is doing something like putting a penis on their belly button, is it—would it be typical that a child would immediately recognize that as wrong?

"[HIDALGO:]   Would it be typical that they would immediate—no. It would not be typical.

"[PROSECUTOR:]   Why?

"[HIDALGO:]   They don't know that it's necessarily wrong. Right? They don't have any point of reference. It's not—especially if it's somebody that's a trusted individual, right? They might not necessarily question that."

Defendant did not object to that testimony, so he requests plain-error review. An error is plain when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). It is a matter of discretion whether we will correct a plain error. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006). Given defendant's failure to object at trial, "the pertinent question is whether the trial court plainly erred by not interrupting [the challenged testimony] *sua sponte*." *State v. Corkill*, 262 Or App 543, 551, 325 P3d 796, *rev den*, 355 Or 751 (2014).

"[I]n Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983); *see also State v. Keller*, 315 Or 273, 285, 844 P2d 195 (1993) ("Once again, we repeat that a witness may not testify about the credibility of another witness."). A trial court commits plain error by failing to exclude evidence *sua sponte* when there is "true vouching," which involves one witness testifying that "he or she believes that another witness is or is not credible, which a party offers to bolster or undermine the veracity of that other witness." *Corkill*, 262 Or App at 552 (internal quotation marks omitted). In such cases, the trial court must intervene *sua sponte* because the testimony creates "a risk that jurors would rely on witnesses' opinions about the credibility of an alleged victim to avoid their independent obligation to determine whether the complainant's allegations were truthful." *Id*. at 552-53.

Here, the claimed errors are not plain because it is not obvious or beyond dispute that Hidalgo's testimony constituted true vouching. In response to questions about whether various statements by B during the CARES interview were concerning to her, Hidalgo explained that it was common or typical for children that age or in that setting to make such statements. Hidalgo did not directly express her own opinion that B's allegations of abuse were credible, and the jurors could have understood Hidalgo's testimony as providing information to help them draw their own conclusions about B's credibility. Thus, it is not obvious or beyond reasonable dispute that the jurors would have understood Hidalgo as vouching for the child's credibility. *See Middleton*, 294 Or at 432-34 (testimony regarding the typical response of a rape victim was not impermissible vouching); *see also State v. Brand*, 301 Or App 59, 67, 455 P3d 960 (2019), *rev den*, 366 Or 259 (2020) ("experts may provide general testimony about the behavior of victims"); *State v. Black*, 364 Or 579, 590, 437 P3d 1121 (2019) (witnesses do not engage in vouching when they provide jurors with information that the jurors could use to form their own opinions about the truthfulness of other witnesses).

In arguing otherwise, defendant relies primarily on *State v. Preuitt*, 255 Or App 215, 223, 296 P3d 648, *rev den*,

353 Or 868 (2013), in which we held that a therapist's testimony constituted impermissible vouching. In *Preuitt*, the therapist testified that she had no "concerns or red flags" that the allegations of abuse were a story that the child had adopted from somewhere else, and the therapist observed that the child did not "seem particularly suggestible." *Id.* at 218-19. We concluded that the therapist "testified regarding *her own conclusions* regarding [the child]'s veracity." *Id.* at 223 (emphasis in original).

By contrast, here, the challenged testimony did not amount to an opinion by Hidalgo that B's allegations of abuse were credible. The fact that B did not know the purpose of the CARES interview does not suggest any obvious opinion about B's credibility or suggestibility. B's statement that she was "just kidding" was innocuous because it occurred during the practice narrative, and if B was "just kidding" about everything being fine, then that hurts rather than helps defendant's argument. Regarding B's third and fourth statements, it was reasonable for Hidalgo to explain to the jury why a child might be initially reluctant to describe abuse. Similarly, Hidalgo's explanations for why a child might disclose additional instances of abuse for the first time at a CARES interview were helpful background information. In our view, Hidalgo provided general descriptions about how children react in such circumstances, and it is not obvious or beyond reasonable dispute that Hidalgo was offering her own opinion regarding the credibility of B's allegations of sexual abuse.

For the same reason, the claimed errors concerning Hidalgo's testimony are not apparent on the face of the record without our having to choose among competing inferences. *Gornick*, 340 Or at 169-70. When the expert does not "directly express[] an opinion on the truth of the victim's testimony," then that testimony is not inadmissible, even if the expert's testimony makes it more likely that the jury will believe the victim. *Middleton*, 294 Or at 435. Here, Hidalgo's explanations of B's statements may have made it more likely that the jury would believe B's allegations, but it is not apparent on the face of the record that the trial court erred in failing to strike those explanations, and it is not

apparent that the jurors would have understood Hidalgo to be expressing an opinion regarding the truth of B's allegations of abuse.

Even if we were to conclude that the trial court plainly erred by failing to *sua sponte* strike that testimony, we would not exercise our discretion to correct it because "if defendant had raised a timely objection, the state *** could have chosen to [proceed without] the testimony and avoid the issue." *State v. Cox*, 337 Or 477, 500, 98 P3d 1103 (2004), *cert den*, 546 US 830 (2005). B testified at trial that defendant stuck "his private part in [her] mouth," and that he put "his private part on [her] stomach," and we discern no reason why the jury was not in a position to draw their own conclusions regarding the credibility of B's testimony at trial. We therefore reject defendant's first five assignments of error.

We move to defendant's sixth assignment of error, seeking plain-error review of the trial court's imposition of $5,000 in court-appointed attorney fees. After sentencing defendant to 300 months in prison, the trial court stated:

"My understanding is [defendant] posted [$]50,000 in order to remain out of custody pending trial.

"My guess is the family could use that money back. And so[,] I'm simply going to take [$]5,000 for attorney fees.

"That's a pittance of what is owed. I thought [defense counsel] did a great job, but we're in an attorney crisis right now with defense counsel, so it makes sense to take at least [$]5,000 to apply towards attorney fees.

"I will waive the rest of the fees. And the [$]45,000 minus the administrative costs the County takes will go back to the person who posted it.

"If [defendant] posted it, I would ask that the money go back to his family. Because I think the family, knowing the case as I know, is going to struggle going forward with the length of the sentence for the provider in this case.

"So, [$]45,000 will go back to the person that posted it.

"And if not[,] the person that posted it, it should go back to the family would be my strong, strong recommendation."

Defendant's attorney responded:

> "The only thing that I would add, is there any information—I know that he wants—I don't know who posted the bail, but I know—I think they put it on his books[,] and he posted it. He does want it to go back to his wife.
>
> "Correct?"

Defendant replied, "My wife. Yes."

The trial court stated that it would include defendant's wife's name on the judgment. The judgment required defendant to pay $5,000 in attorney fees with any remaining money "posted for bail * * * to be returned to" defendant's wife.

Defendant did not object to the imposition of attorney fees during sentencing, and he asks for plain-error review. Before imposing a financial obligation for court-appointed attorney fees, the trial court must determine the defendant's ability to pay. *See* ORS 151.505(3) ("The court may not require a person to pay costs under this section unless the person is or may be able to pay the costs."); *see also* ORS 161.665(4) ("The court may not sentence a defendant to pay costs under this section unless the defendant is or may be able to pay them."). "It is the state that bears the burden of proving that a defendant is or may be able to pay attorney fees." *State v. Geddeda*, 313 Or App 440, 444, 493 P3d 1112 (2021).

Here, the error, if any, is not obvious because the trial court relied on the fact that defendant posted a $50,000 security, defendant's attorney stated that defendant posted it, and the official receipt for the security identified defendant as the payor.

When a third party posts the security, then we do not presume that the funds belong to the defendant such that they can be used to pay court-appointed attorney fees or to determine a defendant's ability to pay. *State v. Morales*, 367 Or 222, 231-32, 476 P3d 954 (2020); *see also State v. Deanda*, 331 Or App 217, 221-23, 545 P3d 1256 (2024) (it was a plain error to impose attorney fees where there were no findings regarding the defendant's ability to pay the fees

apart from the availability of a security deposit posted by the defendant's father).

But here the record indicates that defendant posted the security, not a third party.

> "[O]n review for plain error * * *, defendant's security deposit appears to provide sufficient evidence to support the trial court's imposition of court-appointed attorney fees, even if a trial court, when properly presented with questions in the first instance as to how defendant acquired the funds for a security deposit, might reach a different result."

*State v. Casas*, 295 Or App 519, 520-21, 433 P3d 785 (2018). Thus, it is not obvious or beyond reasonable dispute that the trial court erred by relying on the $50,000 security deposit posted by defendant to impose court-appointed attorney fees. The error, if any, was not plain.

Furthermore, even if there had been a plain error, we would not exercise our discretion to correct it. During defendant's trial, there was testimony that defendant owned a construction company with two or three employees. Defendant may have chosen not to object to the trial court's imposition of attorney fees to make sure that most of the funds were transferred back to his wife and family. We therefore reject defendant's sixth assignment of error.

Affirmed.